ALEJANDRO CAMPOS,

       Plaintiff,

v.                                           Civ. No. 17-1070 GJF

NANCY A. BERRYHILL,
*Acting Commissioner of the*
*Social Security Administration*,

       Defendant.

## ORDER

THIS MATTER is before the Court upon Plaintiff Alejandro Campos's ("Plaintiff's") Motion to Reverse or Remand ("Motion"). ECF No. 16. The Motion is fully briefed. *See* ECF Nos. 17 (Commissioner's Response), 20 (Plaintiff's Reply). Having meticulously reviewed the entire record and the parties' briefing, the Court concludes that the Administrative Law Judge's ("ALJ's") ruling should be **AFFIRMED**. Therefore, and for the reasons articulated below, the Court will **DENY** the Motion.

## I.   FACTUAL BACKGROUND

Plaintiff was born November 24, 1975. Administrative Record ("AR") 71. He graduated from high school and completed four years of college. AR 39. He worked as a professional skier, chef, kitchen manager, and tugboat deck hand. AR 26, 39-44. In May 2013, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income with the Social Security Administration ("SSA"), claiming he suffered from a disabling condition that began on January 1, 2011. AR 238-43. Assisted by counsel, Plaintiff claimed that his disability resulted from following impairments: hepatitis C; sarcoidosis; lymphoma; acute pancreatitis; problems with his right shoulder, arm, wrist, hand, and knee and with his left foot; a lumbar spine fracture, depression, and a brain injury. AR 238, 272-73.

In December 2013, the SSA denied Plaintiff's claim, concluding that he had the capacity to "sustain work activity with a light exertional level" and that "[n]o evidence of mental impairment" existed. AR 74, 87. Regarding Plaintiff's physical functioning, State agency physician Colleen Ryan, M.D. noted that the severity of symptoms alleged by Plaintiff "appear[ed] inconsistent with reports of continued participation in extreme biking and other sports." AR 81, 93-94 (referring to "10/23/13 cancer center note addendum," which stated Plaintiff "still continue[d] to participate in extreme sports, had a few injuries from biking accidents from the extreme sports in Colorado; otherwise has maintained fairly good functionality"). After reviewing the record, Dr. Ryan concluded that Plaintiff could perform light exertional work. AR 77-81, 90-94; *see also* 20 C.F.R. § 404.1567(b) (defining "light work").

Regarding Plaintiff's mental functioning, State agency psychiatrist Thomas VanHoose, Ph.D., observed that, in the preceding two years, Plaintiff "ha[d] seen his TS [treating source] multiple times and [made] no complaints of mental impairment or deficits." AR 76, 89. After reviewing the record, Dr. VanHoose concluded that "given the overall evidence, [Plaintiff] is not credible in regards to mental impairment and no further development is warranted." AR 75-76, 88-89.

In April 2014, upon Plaintiff's request for reconsideration, the SSA again denied his claims. AR 135, 137, 143. Regarding Plaintiff's physical functioning, State agency physician Kenneth Glass, M.D., reviewed all of the evidence on file and stated, "[b]ased on the totality of the evidence in file the prior medical analysis was correct. The new evidence presented at recon[sideration] levels does not constitute a bas[is] to add any new physical limitations; therefore, the original analysis is hereby affirmed as written." AR 104; *see also* AR 110, 117, 124.

Regarding Plaintiff's mental functioning, State agency psychiatrist Suzanne Castro, PsyD., also reviewed all of the evidence and affirmed the previous analysis, concluding that Plaintiff did not allege "any changes, worsening, or new conditions [nor] sought mental health treatment since the initial level of the claim." AR 105, 119.

Plaintiff then requested a hearing, which was held before ALJ Eric Weiss in Albuquerque in May 2016. AR 17.[1] Assisted at this stage by a non-attorney representative, Plaintiff testified at the hearing, as did Cornelius J. Ford, an impartial vocational expert. AR 35-59. In July 2016, "after careful consideration of all of the evidence," the ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act. AR 17.[2]

Plaintiff sought relief with the SSA's Appeals Council. In September 2017, the Appeals Council found, among other things, no abuse of discretion by the ALJ, no error of law, and no lack of substantial evidence. AR 1. It therefore denied Plaintiff's request to review the ALJ's decision and affirmed that decision as the Commissioner's final decision. *Id.*

Plaintiff then timely filed suit in October 2017, asking this Court to reverse the decision of the Commissioner or to remand the case for a rehearing. ECF No. 1; Pl.'s Mot. 11-15.

## II. PLAINTIFF'S CLAIMS

Plaintiff asserts three grounds for relief. First, in a five-page questionnaire completed one week before the ALJ hearing in May 2016, a physician assistant rated Plaintiff's mental capacities to do work and, among other things, rated Plaintiff as not meeting "competitive standards" in several areas.[3] Plaintiff claims that the ALJ was required to more thoroughly discuss—and give

---

[1] A brief hearing was also held in March 2016, during which the ALJ granted Plaintiff additional time to obtain a representative and also assisted Plaintiff with obtaining pertinent medical records from various providers. AR 60-70.

[2] A more in-depth discussion of the ALJ's decision appears in Section IV, *infra*.

[3] The contents of this questionnaire are more thoroughly described in Section IV(B)(2) *infra*.

greater weight to—the opinion of this physician assistant as expressed in this questionnaire. Pl.'s Mot. 11-12. Plaintiff's second contention focuses on additional medical treatment records, primarily documenting his subjective assessments of pain on various outpatient visits, which were created after the written opinions of two state agency physicians. AR 383, 1296-1328.[4] Plaintiff argues that, in light of these additional records, the ALJ gave too much weight to the opinions of these state agency physician and did so without an adequate explanation. *Id*. at 13. Third, Plaintiff cites to a typographical error in the ALJ's decision[5] and claims that the ALJ failed to perform a proper "function-by-function assessment" by not considering whether Plaintiff had a limited ability to sit. *Id*. at 13-14.

## III. APPLICABLE LAW

### A. Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[6] The Court's review of that final agency decision is both legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.")

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of

---

[4] These records are described in more detail in Section V(B), *infra*.

[5] As discussed in Section V(C), *infra*, the ALJ inadvertently omitted the word "six" when he wrote that Plaintiff could "sit for [sic] hours per eight-hour workday with normal breaks." AR 22.

[6] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981 (2018); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

The factual findings are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence does not require a preponderance of the evidence. *See Lax*, 489 F.3d at 1084 (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Furthermore, a court is to "review only the *sufficiency* of the evidence, not its weight[.]" *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court should meticulously review the entire record but should neither "reweigh the evidence nor substitute [its] judgment for that of the agency." *Langley*, 373 F.3d at 1118 (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)); *Hamlin*, 365 F.3d at 1214.

Ultimately, if the correct legal standards were applied and substantial evidence supports the ALJ's findings, the Commissioner's decision stands and Plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

## B. Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

The SSA has devised a five-step sequential evaluation process to determine disability. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2018); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Grogan v. Barnhart*, 399 F.3d 1257 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). In the first four steps, the claimant must show (1) that "he is not presently engaged in substantial gainful activity;" (2) that "he has a medically severe impairment or combination of impairments," (3) that the impairment is equivalent to a listed impairment;[7] and (4) that "the impairment or combination of impairments prevents him from performing his past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant meets these burdens, the burden of proof then shifts to the Commissioner to show that the claimant retains sufficient "residual functional capacity" ("RFC") "to perform other work in the national economy in view of his age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146, n5.

## IV. ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

In his July 2016 written decision, the ALJ noted that he carefully considered "all of the evidence" and "the entire record" before him. AR 17, 19. In his "Findings of Fact and Conclusions of Law," the ALJ discussed the evidence and opinions that led to his decision. AR 17, 19-27.

Before beginning his analysis, the ALJ noted that Plaintiff only had sufficient quarters of insurance coverage to remain insured through December 31, 2013, and that Plaintiff would thus

---

[7] If the claimant can show that he has a listed impairment, he will be found to be disabled and no further steps will be analyzed. 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv). Otherwise, if no listed impairment can be shown, the analysis moves on to step four. *Id.*

have to establish that a disability existed on or before that date to be entitled to benefits. AR 17. However, the ALJ ultimately found that Plaintiff was not under a disability from January 1, 2011, through the date of the ALJ's decision on July 6, 2016. *Id.*

## A. Steps One through Three

At step one, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since January 1, 2011, the alleged onset date of his disability. AR 19. At step two, the ALJ found that Plaintiff had the following severe impairments: "gastroesophageal reflux disease (GERD) status post-laparoscopic Nissen Fundoplication (on February 12, 2014); sarcoidosis; right knee status post-anterior ligament reconstruction; osteoarthritis; obstructive sleep apnea and insomnia; chronic pain syndrome; depression; and anxiety." AR 19. The ALJ also found that Plaintiff's "hepatitis C, obesity, hypertension, and traumatic brain injury" were not severe in nature and explained his findings with appropriate references to the record. AR 20.[8]

At step three, the ALJ found no impairment or combination thereof satisfied the criteria of a listed impairment, and he discussed the relevant evidence in explaining his finding. AR 20-22.

## B. Residual Functional Capacity

Before performing the step four analysis, in which the ALJ considers whether a claimant can perform past work, the ALJ must first determine the claimant's RFC. 20 C.F.R. § 404.1520 ("Before we go from step three to step four, we assess your residual functional capacity.").[9] Here, the ALJ found that Plaintiff had the RFC to perform a range of light work as defined in the

---

[8] The ALJ also cited to evidence showing that the medical tests associated with Plaintiff's hepatitis C showed, among other things, normal liver contours; that Plaintiff's body mass index varied between 34.0 and 34.46 and that he was able to walk independently; that Plaintiff's hypertension was stable with prescribed medication; that Plaintiff's pancreatitis symptoms were improved and resolving through diet; and that the only evidence of traumatic brain injury were Plaintiff's subjective statements about such a diagnosis. *Id.*

[9] *But cf. Winfrey v. Chater*, 92 F.3d 1017, 1023 (describing the RFC determination as technically the first part of step four).

regulations.  AR 22.  Specifically, regarding Plaintiff's physical capacities, the ALJ found the following:

> [Plaintiff] is able to lift twenty pounds occasionally and lift and carry ten pounds frequently.  He is able to push and pull twenty pounds occasionally and push and pull ten pounds frequently.  [Plaintiff] is able to walk and stand for six hours per eight-hour workday and sit for [sic] hours per eight-hour workday with normal breaks.  He is able to occasionally climb ramps, stairs, but never ladders, ropes and scaffolds.  [Plaintiff] is able to occasionally balance, stoop, kneel, crouch, and crawl.  He is able to frequently reach with the dominant right upper extremity.  [Plaintiff] must avoid more than occasional exposure to extreme cold, unprotected heights, dangerous moving machinery, and respiratory irritants such as dust, fumes, odors and gases.

*Id*.  Regarding Plaintiff's mental capacities, the ALJ found the following:

> He is able to understand, remember and carry out simple instructions and make commensurate work related decisions and adjust to routine changes in the work setting.  [Plaintiff] is able to frequently interact with supervisors, co-workers and the public.  He is able to maintain concentration, persistence and pace for two hours at a time during the workday with normal breaks.

*Id*.  In making these findings, the ALJ affirmed that he considered "all the symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and the "the opinion evidence" according the regulation's requirements.  *Id*.  Furthermore, the ALJ found that Plaintiff's "medically determinable" impairments could likely cause the symptoms that he was alleging.  *Id.* at 23.  However, the ALJ also found that "the claimant's statements concerning the *intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.*"  *Id*. (emphasis added).   As set forth in more detail below, the ALJ explained the reasoning behind his RFC findings.  AR 23-26.

### 1.  Plaintiff's Physical Impairments

In explaining his findings, the ALJ cited frequently to Plaintiff's physical activity, particularly Plaintiff's participation in extreme sports during the period in which the alleged

disability existed. AR 23-24. The ALJ observed that, in October 2012, Plaintiff saw medical providers, complaining of left knee pain following a bicycle accident. AR 23. A month prior to that, Plaintiff had also sought medical help for left knee pain after a fall. *Id.* (also noting x-ray indicated unremarkable left knee). The ALJ also referenced a medical record from December 2012 that referred to Plaintiff as an "active skier and outdoorsman." AR 24. Furthermore, during December 2012, Plaintiff had asked to be fitted for a custom knee brace that would not interfere with his ski boots, as he was travelling to Utah for one month and wanted something to wear for telemark skiing. AR 24, 535-37, 535 (containing note by provider, stating "[d]ue to the high impact nature of this [patient's] activities a heavy duty [knee brace/orthosis] is indicated").

The ALJ also observed that in November 2012, Plaintiff "related that he was an extreme sportsman, and would leap from eighty-foot high cliffs, crash a few times, and that his injuries were causing him pain." AR 24. In August 2013, Plaintiff had his left arm examined following a bicycle accident. *Id.* The ALJ also cited to another medical record from February 2014 where Plaintiff stated that, although he gained twenty pounds, he "trie[d] to keep active in extreme sports, such as biking to the point that he injured his left arm." *Id.*[10]

In making his findings related to Plaintiff's physician capacities, the ALJ also gave significant weight to the opinion of an orthopedic physician, Robert Schenk, M.D., who performed surgery on the Plaintiff's knee in July 2010 and treated Plaintiff until November 2012. AR 679-89. Dr. Schenk opined in November 2012 that Plaintiff's right knee was sound and had good alignment and an excellent range of motion. AR 24-25, 682-83. The ALJ found Dr. Schenk's

---

[10] The ALJ also discussed Plaintiff's medical history and evidence of his other physical symptoms, including those associated with pancreatitis, sarcoidosis (an inflammatory disease that affects multiple organs, but mostly the lungs and lymph glands), and GERD. AR 23-24. The ALJ also cited to evidence showing that Plaintiff participated in suboxone therapy and a narcotics anonymous group; that his pancreatitis was due to alcohol consumption; and that after his "Nissen fundoplication" procedure to treat his GERD, he was told to follow certain diet instructions and follow-up with a specific physician if there were any complications. AR 23-24.

opinion to be consistent with the weight of the evidence. AR 25. The ALJ also gave significant weight to the medical opinions of two state agency physicians, Drs. Ryan and Glass, who reviewed Plaintiff's file and concluded, among other things, that he could "occasionally lift twenty pounds and ten pounds frequently; sit and/or walk about six hours in eight-hour workday; frequently climb ramps, stairs, balance, and stoop; and occasionally climb ladders ropes, and scaffolds, crouch, and crawl." AR 25.

### 2. Plaintiff's Psychiatric Impairments

Two state agency psychiatrists, Drs. VanHoose and Castro, concluded during their reviews of the record in December 2013 and April 2014, respectively, that Plaintiff did not have any "medically determinable" mental impairments in the preceding two years. AR 75-76, 88-89, 104-05, 118-19. Nevertheless, the ALJ concluded that Plaintiff's alleged depression and anxiety qualified as severe under step two. AR 19.

In further analyzing Plaintiff's psychiatric impairments, the ALJ found that he had mild difficulties in social functioning. AR 21. The ALJ observed that Plaintiff spent time with his family, was able to shop for groceries, and had social anxiety symptoms but refused to take antidepressant psychotropic medications. *Id.* The ALJ found that Plaintiff had only moderate difficulty with concentration, persistence, or pace and was able to "pay bills, count change, and use a checkbook." *Id.*

The ALJ cited a finding by physician assistant Samantha Shannon ("PA Shannon") that Plaintiff had "linear, organized, and goal direct thought" and had "fair" concentration, insight, and judgment. AR 21, 1245; *see also* AR 1240 (Plaintiff stating that his "medications are alright" and "I think they're doing their job" and Plaintiff denying, among other things, increased depression and anxiety symptoms).

On May 17, 2016, one week before Plaintiff's final hearing before the ALJ,[11] PA Shannon completed a five-page "Mental Residual Functional Capacity Questionnaire." AR 1449-53. This questionnaire instructed PA Shannon to give her assessment on various disability claim-related issues, including Plaintiff's mental capacities to do various tasks associated with unskilled, semiskilled, and skilled work, as well as her assessment on whether he was malingering and whether and how much work Plaintiff might have to miss due to his condition. AR 1451-53. PA Shannon, who saw Plaintiff several times over a five-month period, endorsed various limitations that would preclude Plaintiff from working. AR 1451-53.[12]

In explaining his RFC finding regarding Plaintiff's mental capacities, the ALJ reasoned:

> With regard to [Plaintiff's] psychiatric impairments, the record indicates [Plaintiff] has held diagnoses of moderate recurrent depression and post-traumatic stress disorder (PTSD) (EX 10F/2). On October 23, 2015, [Plaintiff] presented to Sage Neuroscience Center for an initial transfer of Mental health care, at which time [Plaintiff] stated he was fairly stable with his current medications (Ex. 10F/5). On December 8, 2015, Samantha Shannon, Physician Assistant-Certified, observed [Plaintiff] stated he was not currently in therapy, and was prescribed psychotropic medications, Ativan, Prazosin, Amlodipine, and Clonidine (Ex. 10F/7). On March 19, 2016, [Plaintiff] treated with Ms. Shannon, who observed [Plaintiff] stated he tried going to a therapist since his last visit but that it was not a good fit for him (Ex. 13F/6). He explained to Ms. Shannon that his prescribed medications were

---

[11] Plaintiff actually had an initial hearing with the ALJ on March 28, 2016, during which the ALJ granted Plaintiff additional time to obtain a representative and also assisted Plaintiff with obtaining pertinent medical records from various providers. AR 60-70. Plaintiff had the second hearing with the ALJ on May 24, 2016. AR 35.

[12] Regarding Plaintiff's abilities to work, she rated Plaintiff as not meeting "competitive standards" in the following four (out of sixteen) listed mental abilities associated with unskilled work: maintaining regular attendance and being punctual, sustaining a normal routine without special supervision, completing a normal workday and workweek without interruptions from psychologically-based symptoms, and performing at a consistent pace without unreasonable number and length of rest periods. AR 1451. She concluded that, with varying degrees of success, Plaintiff was able to perform the remaining twelve listed abilities associated with unskilled work. Id. She similarly rated Plaintiff's mental abilities to do semiskilled and skilled work and other jobs. AR 1452. She also answered whether Plaintiff had a low IQ (no), whether his psychiatric condition exacerbates any of his physical symptoms (no), how often his mental impairments or treatments would cause him to miss work (more than four days per month), whether these impairments would last more than one year (yes), whether Plaintiff was a malingerer (no), and whether these impairments were consistent with the symptoms and limitations she described on the questionnaire (yes). AR 1452-53. In this questionnaire, PA Shannon affirmed that she had treated Plaintiff for depression and post-traumatic stress disorder. AR 1449. She also classified Plaintiff's mood as "dysthymic" (persistently mildly depressed) and anxious; his memory as impaired; and his concentration, insight, and judgment as "fair to poor." Id.

effective in managing his diagnosed moderate recurrent major depression and PTSD (Ex. 13F/12).

AR 24-25. The ALJ then discussed his reasoning in light of the opinion evidence provided by PA Shannon through the questionnaire:

> With regard to the opinion evidence concerning [Plaintiff's] psychiatric impairments, on May 17, 2016, Ms. Shannon signed a mental residual functional capacity assessment which concluded [Plaintiff] held [sic] difficulty with memory and attention, secondary to a previous TBI (Ex. 15F/3). However, on March 3, 206 [sic], Ms. Shannon observed the claimant stated that his psychotropic medications helped to effectively manage his psychiatric symptoms, and during the mental status examination, his thought was linear, organized and goal directed (Ex. 13F/10, 11). Accordingly, I find that the aforementioned conclusion of Ms. Shannon is not consistent with the weight of the evidence, and that Ms. Shannon is not an acceptable medical source, and I give it little weight. I note that Ms. Shannon's limitation of the claimant to simple work, i.e. asking simple questions and asking assistance is consistent with the weight of the weight of the [sic] evidence, and give it partial weight.

AR 25.

In finding that Plaintiff had the sufficient RFC, both physically and psychologically, to perform light work, the ALJ emphasized that such a finding was based on "careful consideration of the entire record." AR 22.

## C. Steps Four and Five

At step four, given the RFC described above, the ALJ found that Plaintiff was unable to perform his past relevant work as a chef, tug boat deck hand, or kitchen manager. AR 26. At step five, however, the ALJ found that Plaintiff was able to successfully adjust "to other work that exists in significant numbers in the national economy," e.g., assembly worker, coupon redemption clerk, or mail clerk. AR 27. Consequently, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from January 1, 2011, through the date of the [ALJ's] decision," July 6, 2016. *Id.*

## V.  ANALYSIS

### A.  ALJ Did Not Err in Discounting PA Shannon's Opinion

Plaintiff asserts that the ALJ erred in weighing PA Shannon's opinion and that the ALJ's RFC conclusions regarding Plaintiff's mental capacities were therefore flawed.  Pl.'s Mot. 11-12. Plaintiff asserts that the ALJ should have given greater weight to PA Shannon's opinion because (1) as part of her treatment, she had Plaintiff complete a PHQ-9 depression screen questionnaire, and (2) she was the only medical professional who both treated Plaintiff and also opined about his mental abilities.  *Id.* 11-12.

Plaintiff also claims that, in discussing PA Shannon's opinion, the ALJ was required to (1) more thoroughly discuss the six factors from 20 C.F.R. § 404.1527(c) for weighing medical opinions and (2) discuss additional portions of PA Shannon's opinion from the "Mental Residual Functional Capacity Questionnaire" that she completed in May 2016.  *Id.* at 11-12.

#### 1.  Controlling legal standard

An ALJ is required to consider opinions even from medical sources who do not qualify as "acceptable medical sources," such as physician assistants.  20 C.F.R. § 404.1527(f)(1).[13]  The SSA instructs ALJs as follows:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity.  Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision

---

[13] The SSA's regulations distinguish between "acceptable medical sources," such as physicians and psychologists, and non-acceptable medical sources, such as physician assistants.  *See* 20 C.F.R. §§ 404.1502(a), 416.902(a); Social Security Ruling (SSR) 06-03p, 2006 WL 2329939, at *1-5 (SSR 06-03p was in effect at the time of the ALJ's decision. The SSA, however, rescinded this SSR for claims filed after March 26, 2017.  Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01 (Mar. 27, 2017)).

allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p, 2006 WL 2329939, at *15; *see also* 20 C.F.R. § 404.1527(f)(2).

Furthermore, the ALJ must also *consider* opinions from non-acceptable medical sources using the same six factors for weighing opinions from acceptable medical sources. 20 C.F.R. § 404.1527(f)(1). The six factors are (1) the examining relationship, if any, between the medical source and the claimant, (2) the treatment relationship, if any, including its nature, length, and extent and the frequency of examination, (3) the degree to which the medical source presents and explains evidence to support a medical opinion, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion is from a specialist and is about an issue related to the medical source's specialty, and (6) other factors that are brought to the ALJ's attention. 20 C.F.R. § 404.1527(c)(1)-(6). The regulation explicitly notes, however, that "not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts in each case." 20 C.F.R. § 404.1527(f)(1).

The Tenth Circuit has clarified that the "ALJ is not required to discuss every piece of evidence." *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) (internal citations and quotations omitted). Instead, the ALJ's decision will generally been found to be adequate if, in addition to discussing evidence that supports his decision, the ALJ discusses "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996); *Wall*, 561 F.3d at 1067.

2. *ALJ Properly Considered PA Shannon's Opinion and Explained Assigned Weight*

Plaintiff argues that the ALJ erred by not giving PA Shannon's opinion great weight, especially because she used the self-administered PHQ-9 depression screening questionnaire to

assess Plaintiff and because she was the only provider who both treated Plaintiff and expressed an opinion regarding his mental capacities. Pl.'s Mot. 11-2. But there is no legal authority that requires the ALJ to give a nonacceptable medical source's opinion great weight either because that source was the one source who treated the patient for a particular condition or because that source based his or her opinions on a test such as the PHQ-9. Although certain opinions may be entitled to controlling weight—such as those from an "acceptable medical source" who also has been a "treating source"—PA Shannon's opinion was not. *See* 20 C.F.R. § 404.1527(a)-(c); SR 06-03p, 2006 WL 2329939, at *2.

Instead, the law required the ALJ to *consider* the opinion of PA Shannon, using the six factors in the SSA regulations, as applicable, and also to *explain* the weight given to her opinion (or to otherwise allow his reasoning to be followed). 20 C.F.R. § 404.1527(c)(1)-(6), (f)(1)-(2); SSR 06-03p, 2006 WL 2329939, at *15. Furthermore, the ALJ was also required to *explain* not just the evidence supporting his decision, but also significantly probative or uncontroverted evidence that he did not rely on. *Clifton*, 79 F.3d at 1010.

The record shows that the ALJ clearly *considered* the opinion of PA Shannon. AR 21-22, 24-25. Although the ALJ was only required to consider (and not necessarily discuss) the applicable six factors, he nevertheless mentioned the examining and treatment relationships between Plaintiff and PA Shannon [AR 24-25]; the inconsistency of her May 2016 opinion with both her March 2016 finding that Plaintiff's thoughts were "linear, organized, and goal directed" and Plaintiff's previous statements that his medication helped to manage his psychiatric symptoms [AR 25]; the consistency of her limitation of Plaintiff to "simple work" with the weight of the evidence [*Id*.]; and the fact that she is a Physician-Assistant Certified provider and therefore not an acceptable medical source [AR 24-25].

Furthermore, the ALJ *explained* the weight that he gave to her opinion. AR 25. Specifically, the ALJ stated that he was giving her opinion "little weight" because it was "not consistent with the weight of the evidence" (e.g., PA Shannon's observations in March 2016 and Plaintiff's own statements) and because PA Shannon was not an acceptable medical source. *Id*. The ALJ gave "partial weight," however, to PA Shannon's limitation of Plaintiff to "simple work, i.e. asking simple questions and asking assistance," and he did so because he found this limitation to be "consistent with the weight of the evidence." *Id*. The ALJ thus discounted PA Shannon's opinion, with the exception of her limitation of Plaintiff to "simple work," and found that Plaintiff was able to perform light work. The ALJ therefore not only explained how he weighed PA Shannon's opinion, but did so in a way that permits his reasoning to be followed.

Finally, the ALJ's RFC findings concerning Plaintiff's mental capacities to perform "light work" are supported by substantial evidence. Two state agency psychiatrists concluded in 2013 that Plaintiff did not have any "medically determinable" mental impairments. *See* AR 75-76, 88-89, 104-05, 118-19. In addition, PA Shannon found, in both January and March 2016, that Plaintiff had "fair" concentration, insight, and judgment and "linear, organized, and goal directed" thoughts. AR 21, 25, 1240-41, 1245. For his own part, Plaintiff stated that his prescribed medication helped his psychiatric symptoms. AR 1240. The evidence that the ALJ relied on was thus neither "a mere scintilla of evidence" nor was it "overwhelmed" by PA Shannon's late-arriving and meaningfully inconsistent opinion. Furthermore, it was not unreasonable for the ALJ to conclude that, based on the evidence, Plaintiff—who also continued to participate in extreme sports while he was applying for disability benefits [*see* AR 24, 81, 94, 535-37, 628, 682, 953]—also had the mental capacity to perform the "light work" described in the ALJ's RFC findings.

Plaintiff implies that the ALJ should have discussed the self-administered PHQ-9 depression screening questionnaire that PA Shannon used to support her findings. Pl.'s Mot. 11. But because the ALJ "as a rule is not a doctor, he should avoid commenting on the meaning of a test . . . when there has been no supporting expert testimony." *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982). Although citing to the results of this test in her medical notes and presumably using it to support her findings, PA Shannon did not expound on the significance of this test or discuss it in any meaningful way. AR 1115-22; 1240-47. More pertinent, however, the ALJ was not required to view the results of a *self-administered*, if not self-serving, questionnaire as "uncontroverted" or "significantly probative" evidence of a disabling condition that warranted discussion—particularly when the veracity of Plaintiff's disability assertions had already come into question through his continued participation in extreme sports. *See Clifton,* 79 F.3d at 1010 (requiring the ALJ to discuss "significantly probative" or "uncontroverted" evidence that he did not rely on). Thus, as a matter of law, the ALJ was not required to discuss the PHQ-9 test.

Although an "ALJ is not required to discuss every piece of evidence," the record must nevertheless show that he considered all of the evidence. *Clifton*, 79 F.3d at 1009-10. The record in this case shows that the ALJ considered PA Shannon's findings—which explicitly referred to and also incorporated the results of these PHQ-9 tests—and therefore considered not only the raw test results but, more importantly, PA Shannon's incorporation of these results into to her findings regarding the Plaintiff's mental capacities. AR 21, 23-25; 1117, 1121, 1241, 1245. That was all the ALJ was required to do.

Lastly, Plaintiff asserts that the ALJ did not consider certain portions of PA Shannon's opinion in the "Mental Residual Functional Capacity Questionnaire." Pl.'s Mot. 11-12. The ALJ,

however, explicitly referred to this questionnaire in his decision [AR 25] and found inconsistencies between PA Shannon's conclusions and the following facts: (a) what she found when previously treating Plaintiff and (b) what Plaintiff previously stated. *Id.* Plaintiff correctly notes that there are portions of the five-page questionnaire that the ALJ does not explicitly discuss. Pl.'s Mot. 11-12. But while the ALJ is required to *consider* all of the evidence, he is not required to *discuss* all of the evidence. *Clifton*, 79 F.3d at 1009-10. Furthermore, although the ALJ could have addressed one-by-one each conclusion within the PA's opinion, it is clear from the record that he both considered her opinion and explained the weight he gave to it. AR 25.

Plaintiff essentially argues that because the ALJ only discussed one of the conclusions, found near the end of page three of PA Shannon's questionnaire (i.e., "PA Shannon signed a mental residual functional capacity assessment which concluded the claimant held [sic] difficulty with memory and attention, secondary to a previous TBI." [AR 25; 1451]), the ALJ must have not considered other parts of this questionnaire. Pl.'s Mot. 11-12. Plaintiff thus implicitly asserts that the ALJ did not consider PA Shannon's statement in the very next sentence on this same page that Plaintiff "would not be able to maintain regular attendance, routines, perform at a constant pace, complete a work day without interruption from psych[ological] symptoms or deal with normal work stress—all because of his major depressive and PTSD symptoms." AR 1451. Or that the ALJ somehow did not, for example, see or consider PA Shannon's checkmarks two pages later to the effect that Plaintiff was not a malingerer and would miss four days of work per month. AR 1453. In this Court's view, however, it is clear that the ALJ did consider the entirety of PA Shannon's opinion contained in the questionnaire—as opposed to only considering in isolation a single sentence on page three of this questionnaire. AR 25. Furthermore, it is clear to this Court that the ALJ gave "little weight" to PA Shannon's overall conclusion from this questionnaire—

i.e., that Plaintiff did not have the mental capacity to work—because it was "not consistent with the weight of the evidence" (with the exception of adopting her recommendation that Plaintiff be limited to "simple work").  AR 25. [14]

As required, the ALJ considered PA Shannon's opinion, explained the weight given to it, and did so in a manner that permitted his reasoning to be "reasonably discerned."  *Davis v. Erdmann*, 607 F.2d 917, 919 n.1 (10th Cir. 1979) (citations omitted); 20 C.F.R. § 404.1527(c)(1)-(6), (f)(1)-(2); SSR 06-03p, 2006 WL 2329939, at *15.  This Court will thus uphold the ALJ's decision—even were it "of less than ideal clarity."  *Davis*, 607 F.2d at 919 n.1.  After all, it is not the role of this Court to reweigh the evidence or to substitute its judgment for that of the agency.  *Langley*, 373 F.3d at 1118.  Instead, this Court is charged only with reviewing whether (1) the ALJ applied the correct legal standards and (2) whether the ALJ's factual findings are supported by substantial evidence.  *Lax*, 489 F.3d at 1084.

In sum, this Court concludes that the ALJ applied the correct legal standards in considering PA Shannon's opinion and explaining the weight given to it.  This Court also concludes that the RFC findings regarding Plaintiff's psychological abilities are supported by substantial evidence.

### B.  The ALJ Did Not Err in Crediting the Opinions of Drs. Ryan and Glass

Plaintiff next emphasizes that he received additional medical treatments that post-dated the written opinions of two state agency physicians, Drs. Ryan and Glass.  Because these two

---

[14] Plaintiff also cites to *Martinez v. Astrue*, 422 F. App'x 719 (10th Cir. 2011) (unpublished), for the proposition that the ALJ was required to describe why he did not accept each specific portion of PA Shannon's opinion. *Martinez*, however, is easily distinguishable.  In *Martinez*, the ALJ gave "great weight" to an opinion of an acceptable medical source, namely a licensed clinical psychologist, but then inexplicably rejected specific critical limitations within that opinion without ever discussing why, an omission the Tenth Circuit held to be reversible error. *Id.* at 724.  Here, in contrast, the ALJ discounted PA Shannon's opinion and explained why he was doing so (i.e., its inconsistency with the weight of the evidence) and why he was giving partial weight to a small portion of it (i.e., its consistency with the weight of the evidence).  AR 25.  The ALJ in this case was thus not required to provide a line-by-line, conclusion-by-conclusion explanation for why he discounted every portion of PA Shannon's opinion because (aside from her limitation of Plaintiff to "simple work") he discounted her entire opinion. *Id.*

physicians necessarily did not consider these treatments, Plaintiff argues that the ALJ gave too much weight to their opinions and did so without an adequate explanation. Pl.'s Mot. at 13. The Court disagrees.

As an initial matter, the Court assumes that Plaintiff is not arguing that the ALJ was legally required to give less weight to these opinions. Pl.'s Mot. at 13. Such an argument would fail, since this Court—as a matter of law—cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118. This Court instead assumes that Plaintiff is arguing that the ALJ's factual findings that rely on these physicians' opinions—i.e., the ALJ's conclusions regarding Plaintiff's RFC for his physical abilities—could not have been supported by substantial evidence.

The Court concludes that the ALJ's RFC factual findings regarding Plaintiff's physical abilities are supported by substantial evidence, and these findings were not overwhelmed by other evidence, including subsequent medical treatments and their associated medical records. First, the medical records that Plaintiff cites on this point are essentially "Outpatient Treatment Logs" that document his subjective complaints of pain and other very basic information on his follow-up visits for medication management [AR 1308-12], pain management [AR 1319, 1321, 1323-24], medication refills [AR 1313, 1315, 1317], pancreatitis [AR 1296, 1298], and other outpatient visits [AR 1300-05, 1327-28]. *See* Pl. Mot. 13; Def. Mot. 11; *see also Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986) ("[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." (internal quotation and citation omitted)).

Second, as the Commissioner notes in her response, these physicians already had considered Plaintiff's pain when they issued their opinions. Def. Mot. 11 (quoting AR 78-79, 91-

92, 107-08, 121-22) (observing that these physicians noted Plaintiff's "chronic pain and opioid use" and his "abdominal and MSK [musculoskeletal] pain"). Third, their findings are consistent with medical examination evidence, which shows that Plaintiff had a normal range of motion and full strength, as well as Dr. Schenk's finding that Plaintiff had no restriction in his right knee. Def. Mot. 12 (citing AR 424, 434, 438, 444, 651, 658, 683, 1162-63, 1398, 1201, 1290, 1402).

Plaintiff's second argument is that the ALJ should have discussed these additional medical records when describing the weight he gave to the opinions of Drs. Ryan and Glass. But the ALJ was not required to discuss these additional medical records, because they do not qualify as "significantly probative" or "uncontroverted evidence" of a disability. *Clifton*, 79 F.3d at 1010. Doctors Ryan, Glass, and Schenk were the only medical sources to opine on Plaintiff's physical abilities, and none of them endorsed disabling limitations. AR 25. Although the ALJ could have more thoroughly discussed the opinions of these experts, "the need for express analysis is weakened" when the ALJ does not need to reject evidence to determine Plaintiff's RFC. *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).[15]

This Court therefore concludes that the ALJ applied the correct legal standards in considering the opinions of Drs. Ryan and Glass and in explaining the weight given to their opinions. Furthermore, this Court affirms the ALJ's RFC finding that Plaintiff—who, as mentioned, was physically able to participate in extreme sports during the time frame in which he claimed to be disabled [*see* AR 24, 81, 94, 535-37, 628, 682, 953]—was physically able to do

---

[15] Plaintiff also contends that, in assigning "significant weight" to the opinions of Drs. Ryan and Glass, the ALJ was required to explain why such weight was assigned when only "little weight" was given to PA Shannon's opinion and when additional medical records post-dated the opinions of these two physicians. Pl's Mot. 13; *see also* Pl's Rply. 4. Such an explanation, however, was not required. First, Drs. Ryan and Glass gave opinions on Plaintiff's *physical* abilities, while PA Shannon provided an opinion on Plaintiff's *psychological* abilities. See AR 25. Furthermore, Plaintiff cites no authority for the proposition that the ALJ was required to compare the "little weight" given to PA Shannon's opinion of Plaintiff's psychological abilities with the "significant weight" given to these physicians' opinions of Plaintiff's physical abilities.

"light work." Specifically, the Court concludes that this RFC finding was not "overwhelmed" by the content of these additional medical records, and that this finding was supported by substantial evidence, including the opinions of these three physicians.

### C. ALJ's Harmless Scrivener's Error

Plaintiff correctly notes a typographical error in the ALJ's decision. Pl. Mot. 13-14. Specifically, in describing Plaintiff's RFC, the ALJ stated that Plaintiff is "able to walk and stand for six hour per eight-hour workday and sit for [sic] hours per eight-hour workday with normal breaks." AR 22. It is clear from the record, however, that the ALJ considered how long Plaintiff was able to sit and intended to write "for six hours per eight-hour workday" instead of "for hours per eight-hour workday." *See* AR 22, 55-56 (transcript of ALJ's repeated questioning to the vocational expert about an individual who could "sit for *six* hours per eight-hour workday with normal breaks") (emphasis added); *see also* AR 78, 90, 106, 120 (both state agency physicians opining that Plaintiff could sit for "[a]bout 6 hours in an 8-hour workday," an opinion given significant weight by the ALJ, *see* AR 25). This Court finds this error to be a harmless "scrivener's error" that did not affect the ALJ's consideration of the evidence, his factual findings, or his ultimate conclusion that Plaintiff was not disabled. *See Poppa v. Astrue*, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009) (referencing an ALJ's typographical mistake, which the Court classified as "a mere scrivener's error" that "did not affect the outcome of the case").

## VI. CONCLUSION

For the foregoing reasons, the Court holds that the ALJ applied the correct legal standards and that his findings and decision were supported by substantial evidence.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **AFFIRMED** and that the instant cause is **DISMISSED**.

**IT IS SO ORDERED**.

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*